**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**

| | |
|---|---|
| RIDGWAY N. MILLS,<br><br>*Plaintiff*,<br><br>v.<br><br>IVAN J. BATES, *et al.*,<br><br>*Defendants*. | Case No. 25-cv-3958-ABA |

**MEMORANDUM OPINION**

Plaintiff Ridgway Mills was formerly employed as an Assistant State's Attorney in the Office of the State's Attorney for Baltimore City. In January 2025, he was in an automobile accident, which allegedly left him with a concussion and post-concussion syndrome. After approximately fifty-two days of leave during which time Mr. Mills did not provide his employer with the requisite paperwork for Family and Medical Leave Act ("FMLA") leave, Mr. Mills was terminated from his employment. He has sued his former employer, the State's Attorney, Ivan J. Bates, and the Mayor and City Council of Baltimore City. State's Attorney Bates filed a motion to dismiss, or in the alternative for summary judgment, which has been fully briefed. The Mayor and City Council of Baltimore City filed a motion to dismiss, to which Mr. Mills did not respond. For the reasons that follow, the motions will be granted.

## I. BACKGROUND[1]

Mr. Mills was employed as an Assistant State's Attorney for almost ten years. ECF No. 2 ¶ 7. During January and February 2025, Mr. Mills was supervised by Jennifer J.

[1] At the pleadings stage, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff."

Brady, the Chief of the Firearms and Drug Trafficking Division of the State's Attorney Office. ECF No. 4-3, Affidavit of Jennifer J. Brady ("Brady Decl.") ¶¶ 1, 2. The State's Attorney's Office Policy Manual, which all employees are given, provides that "[a]ll sick leaves of three or more consecutive days are treated as leave under the FMLA," and "[f]orms for FMLA are available on the intranet," and directs that "[a]ny questions about FMLA should be directed to" Steward Beckham, the Deputy State's Attorney and Chief of Finance and Human Resources for the State's Attorney for Baltimore City. ECF No. 4-2, Affidavit of Steward D. Beckham ("Beckham Decl.") ¶¶ 1, 8.

On January 7, 2025, Mr. Mills was involved in an automobile accident in which he was rear ended while at a traffic light. ECF No. 12-1, Affidavit of Ridgway N. Mills ("Mills Decl.") ¶ 1; ECF No. 2 ¶ 10; ECF No. 4-3, Brady Decl. ¶ 3. At some point that same day, Mr. Mills informed Chief Brady of the accident, sent a photograph of the rear of his vehicle, and informed her that he would not be able to come to work. ECF No. 4-3, Brady Decl. ¶ 3. At some point that same day or in the days following, Mr. Mills informed Chief Brady that he had a concussion and post-concussion syndrome. *Id.* ¶¶ 3, 4; ECF No. 2 ¶¶ 11, 14.

In the days the followed, Mr. Mills exchanged a number of text messages with David Wiseman, Chief Brady's deputy chief. ECF No. 12-1, Mills Decl. ¶ 9; ECF No. 12-2 at 1–12. For example, on January 9, 2025, Mr. Wiseman asked Mr. Mills, "Are you off

---

*King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016). Because State's Attorney Bates has also moved for summary judgment, and for the reasons discussed in § III.B, the Court may consider evidence outside of the pleading and must construe all facts in the light most favorable to Mr. Mills, and draw all reasonable inferences from those facts in Mr. Mills's favor. *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587–88 (1986); *Sedar v. Reston Town Ctr. Prop., LLC*, 988 F.3d 756, 761 (4th Cir. 2021).

today or working remotely? Just checking in on charging for tomorrow, that's all. How are you feeling?" ECF No. 12-2 at 1. Mr. Mills responded, "I feel not great. Headache, tired, fuzzy. Body and neck aches I expected. Doc said stay home, try to reduce cognitive load." *Id.* at 2. At no point in this discussion did Mr. Mills expressly state whether he intended to take sick leave or FMLA or if he was simply working remotely.

On January 13, 2025, Mr. Wiseman sent Mr. Mills a text about a case assigned to him to which Mr. Mills responded, "I'm probably gonna [*sic*] need coverage. I'm thinking very slowly. Trying to make sure [I] have all offer sheets ready. I am not in trial-ready condition." *Id.* at 3–4. Mr. Wiseman instructed Mr. Mills to "send an email to Brady, Brian, and me, and try to arrange coverage." *Id.* at 4. Mr. Mills responded that he was off the next day because it took him 20 minutes to find his car keys, to which Mr. Wiseman responded, "Gotcha. Please send the email." *Id.* There is no indication as to whether such email was sent. On January 17, 2025, Mr. Wiseman texted Mr. Mills again asking whether he was working that day and asking him to look at an email, to which Mr. Mills responded that he would take a look, but he was "not firing on all cylinders." *Id.* at 5. Mr. Wiseman explained, "I think there's some frustration from supervisors about your lack of communication after the crash. It's been two weeks and Brady, Brian, and I have no clear idea if you're taking sick leave, trying to work from home, being effective while working from home, etc., and we have no idea if you've arranged something or communicated with Josie [a member of the human resources team] or anyone in the front office that hasn't been forwarded to us." *Id.* at 6. Mr. Mills responded that he had a concussion and was trying to keep up with the required documents but was not doing a good job at it because he could not think clearly. *Id.*

On January 27, 2025, Chief Brady and Mr. Wiseman spoke with Mr. Mills by phone. They advised him that, "if he intended to take off for an extended period[,] he needed to file his [FMLA] paperwork promptly. [And] Mr. Mills advised that he would do so." ECF No. 4-3, Brady Decl. ¶ 5. Following the call, Chief Brady texted Mr. Mills telling him to "assume all [his] cases have been reassigned . . . . Essentially don't work. Your job is to get better." ECF No. 12-2 at 13.[2]

On February 10, 2025, Chief Brady sent a text asking Mr. Mills whether he had an update on when he expected to return, so that they would know how far out to reassign cases. *Id.* at 14. As Mr. Mills did not respond, Ms. Brady sent a follow-up text on February 11 to which Mr. Mills responded that he did not know. *Id.* He explained that his "doctor was talking in terms of months, not weeks," but that he did not have a clear indication of when he would be ready to return to work. *Id.* at 16.

On February 13, Chief Brady informed Mr. Mills that a member of the human resources team had informed her that he had not submitted his FMLA paperwork and told him, "You need to do this ASAP." *Id.* at 17; ECF No. 4-3, Brady Decl. ¶ 8. Mr. Mills never responded to this text. *Id.* ¶ 9. That same day, Chief Beckham sent Mr. Mills an email advising him to complete his FMLA forms "as soon as possible" and attaching the FMLA Request for Leave form, Certification of Health Care Provider form, Employees Rights and Responsibilities Under the Family and Medical Leave Act, and FMLA

---

[2] Mr. Mills contends that, at some point on or about the last week of January 2025, he sent Chief Brady an email detailing his medical issues and his uncertainty about his return to work but that he does not have access to that email as it was in his work email, to which he no longer has access. ECF No. 12-1, Mills Decl. ¶ 10 & n.1. Mr. Mills does not specify what details he believes this email contains, and he does not assert that a note from any medical professional was included in this email.

Instructions. ECF No. 4-2, Beckham Decl. ¶ 7; ECF No. 4-2 at 5–9. The email informed Mr. Mills that one of the forms needed to be completed by a medical professional. ECF No. 4-2, Beckham Decl. ¶ 7.

On February 24, because Mr. Mills had still not submitted his FMLA forms, Chief Beckham called him and advised him again that he needed to complete the paperwork, which Mr. Mills said that he would do. *Id.* ¶ 9; ECF No. 12-1, Mills Decl. ¶ 14. During the phone call, Mr. Mills told Chief Beckham about his concussion and symptoms and advised him that he was under a doctor's care. ECF No. 12-1, Mills Decl. ¶¶ 11–13.

On February 28 (fifty-two days after Mr. Mills's car accident), Chief Beckham sent Mr. Mills a notice that his employment had been terminated. ECF No. 4-2, Beckham Decl. ¶ 10. The termination letter states:

> During the period of your absence, several requests were made to you to submit valid and signed FMLA documentation to cover the estimated period of your absence and recovery. These requests came from your supervisor, Division Chief Jennifer Brady, and most recently, on February 24, 2025, from me. To date neither Chief Brady, the HR team, nor I have received any FMLA documentation from you.
>
> Regrettably, I must inform you that effective immediately, your employment with the Office of the State's Attorney for Baltimore City (BCSAO) has ended. Your failure to return to work without explanation or communication, and your failure to respond to requests for FMLA documentation, operates as your resignation from your position as an Assistant State's Attorney for Baltimore City.

ECF No. 4-2 at 10; ECF No. 12-4.

After his termination, on March 3, Mr. Mills submitted his FMLA Request for Leave form, which was signed and dated by him that same day. ECF No. 4-2, Beckham Decl. ¶ 11; ECF No. 12-3 at 1. On March 4, Mr. Mills submitted the Certification of

Health Care Provider form, which was signed and dated by his doctor the same day. ECF No. 4-2, Beckham Decl. ¶ 11; ECF No. 12-3 at 2–4. These forms indicate that Mr. Mills intended to return to work on March 31, a date not previously relayed to his employer. ECF No. 12-3.

Mr. Mills filed this lawsuit, asserting three claims: violation of the FMLA, discrimination in violation of the Americans with Disabilities Act ("ADA") and "Maryland State Law" based on a failure to accommodate, and discrimination in violation of the Rehabilitation Act of 1973 (the "Rehabilitation Act"). ECF No. 2 at 3–6. State's Attorney Bates filed a motion to dismiss, or in the alternative for summary judgment, asserting that each of Mr. Mills's claims fails on the merits. ECF No. 4. That same day, the Mayor and City Council of Baltimore City filed a motion to dismiss, asserting that Mr. Mills fails to state any cognizable claims against it because it is not his employer and is not alleged to otherwise be involved. ECF No. 8.

On January 8, 2026, Mr. Mills filed a response stating that it was in "[o]pposition to Defendant's [m]otion to [d]ismiss or in the [a]lternative, for [s]ummary [j]udgment." ECF No. 12 at 1. This response brief does not explicitly state which Defendant and which motion it is in response to (either by name or ECF Number), but it only refers to a motion that is alternatively for summary judgment and the substance of the response brief addresses only the merits of the claims rather than the application of any claims to the Mayor and City Council of Baltimore City. Therefore, the Court will assume that this response relates only to State's Attorney Bates's motion. *See generally* ECF No. 12. State's Attorney Bates filed a reply brief on February 5, 2026. ECF No. 15.

## II. STANDARD OF REVIEW

Defendants have moved to dismiss, and State's Attorney Bates has also, in the alternative, moved for summary judgment.

### A. Failure to State a Claim under Rule 12(b)(6)

A complaint must contain "a short and plain statement of the claim showing the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). When a defendant asserts that, even assuming the truth of the alleged facts, the complaint fails "to state a claim upon which relief can be granted," the defendant may move to dismiss the complaint. Fed. R. Civ. P. 12(b)(6). At the pleadings stage, the Court must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff." *King v. Rubenstein*, 825 F.3d 206, 212 (4th Cir. 2016).

To withstand a motion to dismiss, a complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level" by containing "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although a court reviewing a 12(b)(6) motion must "accept as true all of the factual allegations contained in the complaint and draw all reasonable inferences in favor of the plaintiff," *King*, 825 F.3d at 212, bare legal conclusions "are not entitled to the assumption of truth" and are insufficient to state a claim. *Iqbal*, 556 U.S. at 679.

### B. Summary Judgment

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P.

56(a). A moving party meets its burden when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case" and when the nonmovant bears "the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the non-moving party fails to confront the motion with "sufficient evidence . . . for a jury to return a verdict for that party," the movant is entitled to summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986); *Celotex*, 477 U.S. at 323 ("[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial"); *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) ("When the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts"). In making this determination, the Court views all facts, and all reasonable inferences drawn from those facts, in the light most favorable to the nonmoving party. *Matsushita*, 475 U.S. at 587–88.

Although Rule 56 permits a party to file a motion for summary judgment "at any time until 30 days after the close of all discovery," Fed. R. Civ. P. 56(b), ordinarily summary judgment is only appropriate after discovery. For example, summary judgment is premature when "the nonmoving party, through no fault of its own, has had little or no opportunity to conduct discovery, and when fact-intensive issues . . . are involved." *Harrods Ltd. v. Sixty Internet Domain Names*, 302 F.3d 214, 244 (4th Cir. 2002) (citations omitted); *see also Comm. for Nuclear Responsibility, Inc. v. Seaborg*, 463 F.2d 783, 787 (D.C. Cir. 1971) ("Summary judgment is only appropriate when there is no bona fide material issue, and Rule 56 clearly contemplates that the parties shall have opportunity for deposition in order to establish the existence of a material issue.").

"[T]o defeat a summary judgment motion because more discovery is necessary, a party must submit an affidavit or declaration regarding the need for discovery." *Brent v. City of Cumberland Police Dep't*, 700 F. Supp. 3d 314, 320 (D. Md. 2023) (citing Fed. R. Civ. P. 56(d)).

But sometimes summary judgment is appropriate early in a case including where, as here (as discussed below), a moving party has shown that undisputed evidence entitles it to judgment as a matter of law on a claim or issue, and where the opposing party is unable to show that "more discovery is necessary" on the issue. *Brent*, 700 F. Supp. 3d at 320.

## III. DISCUSSION

### A. Mr. Mills has not alleged facts to establish that he was an employee of the Mayor and City Council of Baltimore City or any other basis for a claim against this Defendant

Claims under FMLA, ADA, and Maryland Fair Employment Practices Act ("MFEPA") can only be filed against one's employer. 29 U.S.C. § 2612(a)(1) (explaining FMLA leave entitlements of eligible employees); 42 U.S.C. § 12112(a) (ADA limiting the rule to covered entities); 42 U.S.C. § 12111(2) (defining "covered entity" under the ADA as "an employer"); Md. Code Ann., State Gov't § 20-606(a) (MFEPA statute defining unlawful practices by an employer). Although the Rehabilitation Act applies to "any program or activity receiving Federal financial assistance," in the employment context the Rehabilitation Act is construed consistently with the ADA. 29 U.S.C. § 794(a); *Freilich v. Upper Chesapeake Health, Inc.*, 313 F.3d 205, 214 (4th Cir. 2002). There are multiple doctrines governing whether an employment relationship exists: direct employment, the integrated employer test, or the joint employment doctrine. *See Glunt v. GES Exposition Serv., Inc.*, 123 F. Supp. 2d 847, 874 (D. Md. 2000) (citing *Hukill v.*

*Auto Care, Inc.*, 192 F.3d 437, 442 (4th Cir. 1999)) (reasoning that, under Title VII and FMLA, if a plaintiff does not allege facts regarding a direct employment relationship, the court may consider the integrated employer test); *Clackamas Gastroenterology Assocs. P.C. v. Wells*, 538 U.S. 440, 448 (2003) (explaining the consideration of control in determining joint employment in the ADA context); *William v. Silver Spring Volunteer Fire Dep't*, 86 F. Supp. 3d 398, 408 n.1 (D. Md. 2015) (holding that MFEPA is subject to the same interpretations as Title VII).

Plaintiff broadly states in his complaint that he "was an employee of Defendant for almost 10 years, most recently employed as an Assistant State's Attorney." ECF No. 2 ¶ 7. He refers to "Defendant" in singular form, despite there being two Defendants in his complaint and states that the specific job at issue in this complaint was when he was working as an Assistant State's Attorney thus working for State's Attorney Ivan Bates. He does not provide any basis upon which one can infer that he was directly or otherwise employed by the Mayor and City Council of Baltimore City. The only statement related to this Defendant simply states that it "is a political subdivision of the State of Maryland." *Id.* ¶ 2.

Maryland courts have "unequivocally held that a state's attorney [is] a State officer" rather than a county or city officer. *Rucker v. Harford Cnty.*, 316 Md. 275, 283 (1989) (citing *Valle v. Pressman*, 229 Md. 591, 600 (1962)). Additionally, Maryland law defines "State personnel" to include "a State's Attorney of a county or Baltimore City, or an employee of an office of a State's Attorney." Md. Code Ann., State Gov't, § 12-101(a), (a)(8). There are rare circumstances in which an Assistant State's Attorney may be considered a joint employee of a county, but these are generally limited to cases regarding wages. *See Newell v. Runnels*, 407 Md. 578, 651–54 (2009) (concluding that a

factfinder *could* determine that the County was a joint employer of the State's Attorney's Office employee based on the specific facts).

As Plaintiff does not assert any facts that would render him directly or jointly employed by the Mayor and City Council of Baltimore City and does not assert any facts regarding actions independently taken by the Mayor and City Council, the Court will dismiss all claims against them without prejudice.

**B. State's Attorney Bates's alternative motion for summary judgment**

"When 'matters outside the pleading are presented to and not excluded by the court, the [12(b)(6)] motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.'" *Laughlin v. Metro. Wash. Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998) (quoting Fed. R. Civ. P. 12(d)). In that case, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d). "[T]o defeat a summary judgment motion because more discovery is necessary, a party must submit an affidavit or declaration regarding the need for discovery," *Brent*, 700 F. Supp. 3d at 320 (citing Fed. R. Civ. P. 56(d)), which Mr. Mills has not filed, *see generally* ECF No. 12-1, Mills Decl. Sometimes summary judgment is appropriate early in a case including where, as here, a moving party has shown that undisputed evidence entitles it to judgment as a matter of law on a claim or issue, and where the opposing party is unable to show that "more discovery is necessary" on the issue. *Brent*, 700 F. Supp. 3d at 320.

As State's Attorney Bates filed his motion as one for dismissal or alternatively for summary judgment, Mr. Mills was given a reasonable opportunity to present pertinent information regarding a motion for summary judgment or any need for discovery. Mr.

Mills failed to file an affidavit or declaration regarding the need for discovery in his response brief. *See generally* ECF No. 12. In his response, he generally contends that "there are substantial questions of material facts." *Id.* at 7. The only example of an alleged disputed fact is that "Defendant alleges that Plaintiff never requested any accommodation." *Id.* at 11. Mr. Mills, however, does not contend that he did in fact request an accommodation but instead states that he "identified his disabilities in January and February through repeated correspondence with his supervisors and specifically on February 24 when Plaintiff had a phone call with Defendant's head of HR." *Id.* As the Court explains more below, *see* § III.D., *infra*, identifying a disability and requesting an accommodation are different, and the fact that Mr. Mills did not ask for an accommodation is not an issue in dispute. As the Court explains more below, even if that fact were in dispute, it is immaterial to Mr. Mills's claims because, even if the Court were to accept Mr. Mills's contention that he requested an accommodation, his ADA and MFEPA claims would still fail. This is the only fact that Mr. Mills has identified as being in dispute, and he does not otherwise contend that further discovery is necessary. Thus, the Court will evaluate State's Attorney Bates's motion to dismiss, or in the alternative for summary judgment, as a motion for summary judgment.

### C. FMLA claim (Count 1)

Under the FMLA, "an eligible employee shall be entitled to a total of 12 workweeks of leave during any 12-month period . . . [b]ecause of a serious health condition that makes the employee unable to perform the functions of the position of such employee." 29 U.S.C. § 2612(a)(1), (a)(1)(D). An employee who takes such leave is entitled to, upon return, be restored to the person's position of employment as well as equivalent employment benefits, pay, and other terms of employment. *Id.* § 2614(a)(1).

To permit an employer to determine an employee's eligibility for FMLA for a serious health condition, it may require that the claim be supported by a certification issued by a health care provider, and the "employee shall provide, in a timely manner, a copy of such certification to the employer." *Id.* § 2614(c)(3)(A)(ii), (c)(3)(B); 29 C.F.R. § 825.305.

When leave is foreseeable, an "employee shall provide the employer with not less than 30 days' notice, before the date the leave is to begin." 29 U.S.C. § 2612(e)(1). But "[i]f 30 days notice is not practicable, such as because of . . . a medical emergency, notice must be given as soon as practicable." 29 C.F.R. § 825.302(a). "As soon as practicable means as soon as both possible and practical, taking into account all of the facts and circumstances in the individual case." *Id.* § 825.302(b). "An employee shall provide at least verbal notice sufficient to make the employer aware that the employee needs FMLA-qualifying leave, and the anticipated timing and duration of the leave." *Id.* § 825.302(c). Because "the employee need not expressly assert rights under the FMLA or even mention the FMLA," "[i]n all cases, the employer should inquire further of the employee if it is necessary to have more information about whether FMLA leave is being sought by the employee, and obtain the necessary details of the leave to be taken." *Id.* "In the case of medical conditions, the employer may find it necessary to inquire further to determine if the leave is because of a serious health condition and may request medical certification to support the need for such leave." *Id.* "An employee has an obligation to respond to an employer's questions designed to determine whether an absence is potentially FMLA-qualifying" *Id.* A "[f]ailure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying." *Id.*

"An employer may require an employee to comply with the employer's usual and customary notice and procedural requirements for requesting leave, absent unusual circumstances" so long as those policies do not require notice sooner than what is set out in the regulations. *Id.* § 825.302(d). "For example, an employer may require that written notice set forth the reasons for the requested leave, the anticipated duration of the leave, and the anticipated start of the leave. An employee also may be required by an employer's policy to contact a specific individual." *Id.* "Where an employee does not comply with the employer's usual notice and procedural requirements, and no unusual circumstances justify the failure to comply, FMLA-protected leave may be delayed or denied." *Id.*

It is undisputed that, following Mr. Mills's notice to Chief Brady that he had been in an automobile accident, various individuals within the State's Attorney's Office attempted to gather information from Mr. Mills that would be needed to determine his eligibility for FMLA leave. It is also undisputed that Mr. Mills did not respond to these communications, did not clarify whether he was seeking leave and for how long, and did not provide a certification from a healthcare provider until fifty-six days (eight weeks) after his accident. It is undisputed that the State's Attorney's Office had a policy regarding the completion of FMLA forms after three consecutive sick days, and that all employees received a copy of this policy at the beginning of their employment. Finally, it is undisputed that Mr. Mills never communicated that there was any type of unusual circumstance that prevented him from providing the necessary documentation sooner, such as a delay in his healthcare provider filling out his paperwork or lack of access to the documentation due to an overnight stay in the hospital. Therefore, even viewing the

facts in the light most favorable to Mr. Mills, State's Attorney Bates is entitled to summary judgment.

Mr. Mills contends that, after his automobile accident, he suffered from a concussion and post-concussion syndrome. Even assuming these constitute "serious health conditions" under the FMLA, which the Court need not decide, Mr. Mills failed to provide notice that he was seeking FMLA leave "as soon as practicable" after his accident or diagnoses. *Id.* § 825.302(a). Mr. Mills does not dispute that under the State's Attorney's Office Policy Manual, sick leave of more than three consecutive days is treated as FMLA leave and thus requires the FMLA forms to be completed. *See* ECF No. 4-2, Beckham Decl. ¶ 8; *see generally* ECF No. 12 (not disputing this fact). As employees are required to follow an employer's leave policies regarding FMLA notice, Mr. Mills was required to give notice as of January 13 (the fourth business day after the accident) that he intended to take FMLA leave. But it is clear from Mr. Mills's texts with Mr. Wiseman on January 9, 13, and 17 that, although Mr. Mills had informed his supervisors of his concussion, he had not informed them, despite their inquiries, whether he was taking leave or working remotely. *See* ECF No. 12-2 at 1–6. To the extent there was any ambiguity, Mr. Mills was explicitly told on January 13, 17, and 27 that he needed to provide written notice of his intent to take leave and it is undisputed that he did not do so. *Id.* at 3–6, 13; ECF No. 4-3, Brady Decl. ¶ 5.

Further, the FMLA regulations require an employee's notice to include "the anticipated timing and duration of the leave." 29 C.F.R. § 825.302(c). To the extent Mr. Mills argues that his verbal and text communications were sufficient notice because he need not say "FMLA" explicitly, his continued failure to provide any estimation of a return date or documentation explaining the anticipated timing renders any alleged

notice insufficient. ECF No. 12 at 8–9; ECF No. 12-2 at 14–17; ECF No. 12-1, Mills Decl. ¶¶ 11, 14.

Even assuming Mr. Mills had sufficiently provided his employer with notice of his intent to take FMLA leave, his failure to respond to his employer's inquiries in a timely manner so that they could determine his eligibility for FMLA is a sufficient basis for the denial of any FMLA leave request. Mr. Mills acknowledges that an employer has the right and "duty of further inquiry" to determine whether a leave request for a serious health condition meets the qualifications for FMLA. ECF No. 12 at 8–9. He further does not dispute that his employer provided him with the necessary FMLA forms on multiple occasions. *Id.* at 9; ECF No. 12-2 at 6, 17; ECF No. 4-2, Beckham Decl. ¶¶ 5, 7, 9. He contends, however, that because he submitted his FMLA form on March 3 and submitted his Certification on March 4, stating that he would return to work on March 31 (within the statutory 12-week period), this was sufficient. ECF No. 12 at 9. Mr. Mills, however, conflates the timing for determination of *qualification* for FMLA leave ("as soon as practicable" notice and answers) with the twelve-week leave for which one is entitled once found to be qualified.

Mr. Mills "ha[d] an obligation to respond to [his] employer's questions designed to determine whether an absence is potentially FMLA-qualifying." 29 C.F.R. § 825.302(c). "Failure to respond to reasonable employer inquiries regarding the leave request may result in denial of FMLA protection if the employer is unable to determine whether the leave is FMLA-qualifying." *Id.* Further, "[i]n the case of unforeseeable leave, an employer may deny FMLA coverage for the requested leave if the employee fails to provide a certification within 15 calendar days from receipt of the request for certification unless not practicable due to extenuating circumstances." *Id.* § 825.313(b).

Mr. Mills, therefore, had an obligation to timely respond to his employer's inquiries by completing the one-page FMLA form and having his healthcare provider complete the certification. Whether he was to count the fifteen-day period from the day of the accident, his January 27 phone call with Chief Brady and Mr. Wiseman, or his February 13 phone call with Chief Beckham, Mr. Mills submitting the certification on March 4 was beyond any fifteen-day period in order to qualify him for FMLA leave. Mr. Mills does not point to any case where an eight-week delay in providing any paperwork for an employer to determine whether an employee qualifies for FMLA leave was held to be proper. Finally, Mr. Mills does not contend that any unusual or extenuating circumstances caused his delay. As the twelve-week protection is only provided to those with FMLA-*qualifying* leave, and Mr. Mills failed to provide the necessary information for his employer to determine whether he qualified, State's Attorney Bates is entitled to judgment on this claim.

Accordingly, the Court will grant State's Attorney Bates's motion for summary judgment as to Count 1.

**D. ADA/MFEPA Claims (Count 2)**

Under the ADA and MFEPA, an employer may not "discriminate against a qualified individual on the basis of disability." 42 U.S.C. § 12112(a) (ADA); *Id.* § 12111(2) (defining "covered entity" under the ADA as "an employer"); Md. Code Ann., State Gov't § 20-606(a)(1)(i) (MFEPA). Discrimination based on disability includes "not making reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability who is an . . . employee." 42 U.S.C. § 12112(b)(5)(A); Md. Code Ann., State Gov't § 20-606(a)(4) (under the MFEPA, an

employer may not "fail or refuse to make a reasonable accommodation for the known disability of an otherwise qualified employee").

"[I]n order for a plaintiff to establish a prima facie case against his employer for failure to accommodate under the ADA, the plaintiff must show: '(1) that he was an individual who had a disability within the meaning of the statute; (2) that the [employer] had notice of his disability; (3) that with reasonable accommodation he could perform the essential functions of the position . . . ; and (4) that the [employer] refused to make such accommodations.'" *Wilson v. Dollar Gen. Corp.*, 717 F.3d 337, 345 (4th Cir. 2013) (quoting *Rhoads v. Fed. Deposit Ins. Corp.,* 257 F.3d 373, 387 n.11 (4th Cir. 2001)). Therefore, employers need only accommodate *known* disabilities. *Kelly v. Town of Abingdon, Va.*, 90 F.4th 158, 166 (4th Cir. 2024) (citing *Wirtes v. City of Newport News*, 996 F.3d 234, 238 (4th Cir. 2021)). "To trigger an employer's duty to accommodate, a disabled employee need only 'communicate[ ] [his] disability and desire for an accommodation.'" *Id.* (quoting *Jacobs v. N.C. Admin. Off. of the Cts.*, 780 F.3d 562, 581 (4th Cir. 2015)). An employee need not "identify a specific, reasonable accommodation"; upon an ambiguous request for an accommodation, "the employer should seek clarification" thus triggering an interactive process to determine the range of accommodations available to that employee. *Id.* (quoting *Jacobs*, 780 F.3d at 581; and citing *Mueck v. La Grange Acquisitions, L.P.*, 75 F.4th 469, 487 n.14 (5th Cir. 2023); *Wilson*, 717 F.3d at 346). These requirements are the same for a claim under MFEPA. *See Peninsula Reg'l Med. Ctr. v. Adkins*, 448 Md. 197, 213 (2016) (citing *Gaither v. Anne Arundel Cnty.*, 94 Md. App. 569, 583 (1993); *Jacobs*, 780 F.3d at 579).

Mr. Mills contends that "[u]pon learning that Plaintiff was suffering from a disability, Defendant was required to engage in an interactive dialogue with Plaintiff to

determine what accommodation, if any, Plaintiff requested to perform the essential functions of his job." ECF No. 2 ¶ 35. Mr. Mills misstates the ADA accommodations process and overlooks his obligations in the process.

First, for the same reasons stated above, *see* § III.C, *supra*, Mr. Mills has failed to show that he had a *known* disability based on his failure to communicate with his employer and provide any form of documentation to support his alleged serious health condition.

Given that notice of his disability need not be stated in specifics, even assuming (without deciding) that Mr. Mills provided sufficient notice that he had a disability, he does not allege that he ever requested any accommodation. Based on the evidence in the record, "[a]t no time did Mr. Mills seek a workplace accommodation for an alleged disability." ECF No. 4-2, Beckham Decl. ¶ 12. To invoke the ADA, a request for an accommodation "must be 'sufficiently direct and specific,' providing notice that the employee needs a 'special accommodation' for a medical condition" within the surrounding circumstances of the employee's communication. *Kelly*, 90 F.4th at 167 (quoting *EEOC v. C.R. Eng., Inc.*, 644 F.3d 1028, 1049 (10th Cir. 2011)). Therefore, even if Mr. Mills "was entitled to a reasonable accommodation, including, but not limited to, additional leave, light duty, modified work schedule, reassignment to a less mentally and physically challenging position until he was fully recovered or such other reasonable accommodation as would allow him to perform the essential functions of his job," it is undisputed that Mr. Mills never requested any accommodation for his concussion. ECF No. 2 ¶ 16; *see generally* ECF No. 12-1, Mills Decl. (no statement regarding a request for accommodations made); ECF No. 12 at 10–11 (arguing that notice of a disability alone triggered his employer's obligation to provide an accommodation).

Finally, even assuming *arguendo* that Mr. Mills had sufficiently given notice of his disability, and that he requested an accommodation based on his requests for extended leave, "Mr. Mills failed to engage in an interactive process to determine a reasonable accommodation." ECF No. 4-1 at 12. The "ADA regulations contemplate that the employer will pursue an 'informal, interactive process' with its disabled employees to ascertain the extent of their disabilities and the range of accommodations that might address them." *Kelly*, 90 F.4th at 166 (quoting *Wilson*, 717 F.3d at 346). Mr. Mills's employer attempted on multiple occasions to gather information from him to understand the scope of his disability and receive medical certification of his injuries, but he failed to adequately engage in this dialogue. He cannot fault his employer for failing to provide an accommodation when it tried, but was not able to, by no fault of its own, gather sufficient information in order to determine what type of accommodation would be helpful to him.

Accordingly, State's Attorney Bates is entitled to summary judgment on Count 2.

### E. Rehabilitation Act Claim (Count 3)

Under the Rehabilitation Act, "[n]o otherwise qualified individual with a disability in the United States . . . shall, solely by reason of her or his disability . . . be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794(a). Although the analysis of the Rehabilitation Act is generally the same as under the ADA, *see Freilich*, 313 F.3d at 214, claims under the Rehabilitation Act "require a showing of discrimination '*solely* by reason of' disability," *Smith v. N.C. Dep't of Adult Corrs.*, Case No. 23-cv-218-GCM, 2023 WL 6217756, at *3 (W.D.N.C. Sept. 25, 2023) (quoting 29 U.S.C. § 794(a)) (emphasis added). For the same

reasons that Mr. Mills's ADA claim fails, *see* § III.D, *supra*, State's Attorney Bates is entitled to summary judgment on Count 3 too.

## IV. CONCLUSION

For the foregoing reasons, State's Attorney Bates's motion for summary judgment will be granted and Mayor and City Council of Baltimore City's motion to dismiss will be granted. A separate order and judgment follow.

Date: September 3, 2026

/s/
Adam B. Abelson
United States District Judge